**Judge Rienne H. McElyea**
**Department 2**

John L. Amsden, Esq.
BECK AMSDEN & STALPES, PLLC
2000 South 3rd Avenue, Suite A
Bozeman, MT 59715
Tel:   406-586-8700
Fax:   406-586-8960
amsden@becklawyers.com

Trent M. Gardner, Esq.
GOETZ, BALDWIN & GEDDES, P.C.
35 North Grand 59715
P.O. Box 6580
Bozeman, MT 59771-6580
Tel:   406-587-0618
Fax:   406-587-5144
TGardner@Goetzlawfirm.com

*Attorneys for Plaintiff*

## MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT
## GALLATIN COUNTY

| | |
|---|---|
| FARMHOUSE PARTNERS LIMITED PARTNERSHIP, <br><br> Plaintiff, <br><br> v. <br><br> Multi-Housing Tax Credit Partners XXX, <br><br> Defendant. | Cause No. DV-21-450B <br><br> **SUMMONS** <br><br> **Multi-Housing Tax Credit Partners XXX** |



EXHIBIT
*A*

**TO:  Multi-Housing Tax Credit Partners XXX**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you or (42 days if you are the State of Montana, a state agency, or a state officer or employee), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in your calculation of time. The answer or motion must be served on the plaintiff or plaintiff's attorney, if plaintiff is represented by an attorney, whose name and address are listed above.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.

You also must file your answer or motion with the court.

Date: _April 30, 2021_                      CLERK OF THE DISTRICT COURT
                                            SANDY ERHARDT

    (Seal)                                  By: _Nicole Bauerle  deputy clerk_

2

John L. Amsden, Esq.
BECK AMSDEN & STALPES, PLLC
2000 South 3rd Avenue, Suite A
Bozeman, MT 59715
Tel:   406-586-8700
Fax:   406-586-8960
amsden@becklawyers.com

Trent M. Gardner, Esq.
GOETZ, BALDWIN & GEDDES, P.C.
35 North Grand 59715
P.O. Box 6580
Bozeman, MT 59771-6580
Tel:   406-587-0618
Fax:   406-587-5144
TGardner@Goetzlawfirm.com

*Attorneys for Plaintiff*



## MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT
## GALLATIN COUNTY

| | |
|---|---|
| FARMHOUSE PARTNERS LIMITED PARTNERSHIP,<br><br>            Plaintiff,<br><br>      v.<br><br>Multi-Housing Tax Credit Partners XXX,<br><br>            Defendant. | Cause No. DV-21-450B<br><br>**COMPLAINT FOR EQUITABLE RELIEF** |

Plaintiff Farmhouse Partners Limited Partnership, by and through its counsel of record, and for its complaint against the above-named Defendant, complains and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Farmhouse Partners Limited Partnership ("Farmhouse") is an active Montana limited partnership, in good standing, with its principal place of business in Bozeman, Montana.

2.      Defendant Multi-Housing Tax Credit Partners XXX ("MHTCP") is a California limited partnership, which exists for the purpose of investing in certain housing development projects and which is partially owned by JP Morgan Chase & Co.

3.      Farmhouse and MHTCP are partners in an active Montana limited partnership in good standing called Farmhouse Partners – College Limited Partnership ("FPCLP"). FPCLP's mailing address is in Bozeman, Montana.

4.      Farmhouse is the General Partner of FPCLP. MHTCP is the Limited Partner.

5.      At times relevant hereto, acts, omissions and incidents giving rise to the causes of action herein asserted occurred in Bozeman, Gallatin County, Montana.

6.     This Court has subject matter jurisdiction pursuant to Mont. Code Ann. § 3-5-302.

7.     This Court has personal jurisdiction pursuant to Montana's Long Arm Rule, Mont. R. Civ. P. 4(b), and the Due Process Clause of the U.S. Constitution, including because Defendant is found in the State of Montana; transacts business within the State of Montana; has committed acts resulting in accrual of a tort or contract actions within the State of Montana; owns, uses, or possesses property, or an interest therein, within the State of Montana; and/or acts as director, manager, trustee, or other officer of a business organized under the laws of, or having its principal place of business within, the State Montana.

8.     Venue is proper in this county, including pursuant to Mont. Code Ann. §§ 25-2-121 and 25-2-122, because this is the county where performance under relevant contracts was due, where the subject matter of the partnership may be found, and where damages, loss or injury was incurred.

## ALLEGATIONS COMMON TO ALL COUNTS

9.     Plaintiff Farmhouse hereby incorporates all other paragraphs of this complaint as though fully set forth herein.

10.     The original partners of the FPCLP partnership were Farmhouse (general partner) and an entity called Multi-Housing Investments LLC (limited

partner), which entities entered into an Amended and Restated Agreement of Limited Partnership ("LPA") dated September 5, 2002.

11.     The principal of Farmhouse at the time the LPA was executed was William C. Dabney III.

12.     Pursuant to a First Amendment dated November 25, 2002, MHI withdrew as the limited partner and MHTCP became the limited partner.

13.     Capital contributions under the LPA were used to construct low-income housing in Bozeman, Montana. The project is now known to the parties as the "Bridger I" project and is FPCLP's principal asset.

14.     In exchange for its capital contributions, the limited partner (in this case, MHTCP) receives valuable tax credits worth millions of dollars.

15.     The general partner generally makes a smaller capital contribution, gets paid by the partnership to do the development work and then manages the property in exchange for fees paid by the partnership.

16.     The general partner (in this case Plaintiff Farmhouse) also receives a valuable option to purchase the limited partner's (Defendant MHTCP's) interest in the project.

17.     On January 26, 2021, Farmhouse timely and properly notified MHTCP of its intent to exercise its option.

18.   In response, MHTCP informed Farmhouse that MHTCP considered Farmhouse to be in material breach of the LPA and therefore unable to exercise its option.

19.   The explanation of MHTCP's contention is as follows:

a.   Both Bridger I and a sister project known as "Bridger II" were developed during the course of their marriage by William C. Dabney III and Susan B. Dabney (now known as Susan B. Burrows).

b.   While William's entity (Farmhouse) was the formal partner on the projects, Susan's family inheritance was the source of the land purchase for Bridger II, that land and improvements thereon will revert to her at the end of the ground lease term, and she has been and remains the long-term lessor of Bridger II.

c.   When William and Susan divorced in 2016, the Court in the divorce proceedings on October 5, 2016, entered an Order By The Court approving a stipulated property settlement agreement and decree of dissolution. Plaintiff Farmhouse herein incorporates by reference the October 5, 2016, Order By The Court (the "2016 Court Order"). It found that the property distribution agreement between William and Susan was "fair, equitable to both parties, not unconscionable, [and] is approved in all respects…"

d.      Part of that distribution contemplated assignment of William's

interests in various multi-family housing projects, including Bridgers I and

II. Such assignment was conditioned, however, upon the limited partner's

(MHTCP's) approval.

e.      MHTCP notified the parties in 2017 that no assignment would

be approved and that therefore any attempted assignment that might have

occurred was ineffective. A true and correct copy of MHTCP's attorney's

letter dated May 23, 2017, is attached hereto as Exhibit 1. Therein,

MHTCP's attorneys acknowledged in writing that:

> As you acknowledge in your letter, pursuant to section 12.1(b)
> of the Amended and Restated Agreement of Limited
> Partnership of the Bridger I Partnership (the "Partnership
> Agreement"), "the General Partner shall have the right to assign
> all or any part of such General Partner's Interest in the
> Partnership only with the Consent of the Limited Partner."
> "Consent of the Limited Partner" is defined as "the prior
> written consent or approval of the Limited Partner." As
> evidenced by the Settlement Agreement dated September 30,
> 2016 (which you attached as Exhibit 1 to your April 20, 2017,
> letter), **the General Partner's assignment of its option to**
> **purchase the Limited Partner's Interest in the partnership**
> **to Susan Burrows was expressly conditioned on receiving**
> **the Limited Partner's consent to the assignment.**
>
> ...
>
> In addition, the Settlement Agreement ... anticipates and
> accounts for the possibility (if not likelihood) that the Limited
> Partner will NOT provide its consent to the transfer of the
> Option, exactly as the Limited Partner has done. Moreover, the

General Partner and Ms. Burrows agreed upon how the Option should be handled under such circumstances.

Exh. 1, Ltr. Quigley to Amsden (May 23, 2017) (emphasis added).

f.     This letter also stated that any issues as to the exercise of the General Partner's option were premature and would not be triggered until 2021. *Id.* p. 3.

g.     Thus, almost four years ago, MHTCP acknowledged in writing that the would-be assignment had been expressly conditioned on MHTCP's consent and that the conditions for Farmhouse's exercise of its option rights would be triggered in 2021.

h.     In addition, continuously since the date that MHTCP indicated its objection to the assignment of the option rights, Farmhouse has operated and continues to manage and operate the property and MHTCP has continued to receive the benefits therefrom.

i.     Yet MHTCP now threatens material breach of its own obligations based on its characterization of the assignment issue.

20.   Farmhouse denies that it has breached—much less materially breached—the LPA.

21.   Susan's involvements and interests were understood from the beginning, MHTCP knew or should have known thereof, and certainly knew or

should have known that the land under which Bridger II was developed will revert to her at the end of the ground lease term.

22.     A conditional assignment, conditioned upon the limited partner's approval, cannot constitute a breach (much less a material breach) of the LPA under any configuration.

23.     Farmhouse contends that it has fully performed all obligations owed under the LPA or, alternatively, that its performance is excused by virtue of MHTCP's material breaches.

24.     Farmhouse contends that the conditions for exercise of Farmhouse's option rights are all satisfied.

25.     By way of this complaint, Farmhouse seeks specific performance of its option rights under the LPA, as well as other appropriate relief under law and equity.

26.     Specific performance is appropriate under the circumstances here presented because the terms of the contract are definite and certain, the remedy at law is inadequate, Plaintiff has tendered performance, and because performance will serve the ends of justice.

## CAUSES OF ACTION

### COUNT ONE – SPECIFIC PERFORMANCE OF CONTRACT

### (Against Defendant MHTCP)

27.     Plaintiff hereby incorporates all other paragraphs of this complaint as though fully set forth herein.

28.     Plaintiff Farmhouse and Defendant MHTCP entered into contractual agreements in the LPA.

29.     Plaintiff Farmhouse has fully performed, and is ready, willing and able to perform, all obligations owed under the LPA or else has been excused from further performance by virtue of Defendant MHTCP's breaches.

30.     Defendant MHTCP has breached or is threatening to breach obligations owed to Farmhouse under the agreements.

31.     In particular, Defendant MHTCP has refused to participate in the process set forth in the LPA for exercise of Farmhouse's option.

32.     As a result of Defendant MHTCP's breaches or threatened breaches, Plaintiff Farmhouse has been forced to hire attorneys and has suffered other damages, injuries, and harms for which it is entitled to be compensated or otherwise entitled to obtain relief herein, including: specific performance of MHTCP's obligations under the LPA; a declaration of rights pursuant to Mont.

Code Ann. § 27-8-101 et seq., and applicable common law; an award of damages in an amount to be decided by a trier of fact; and/or other legal and equitable relief.

## COUNT TWO – DECLARATORY RELIEF

### (Against Defendant MHTCP)

33.     Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

34.     Disputes currently exist between Plaintiff Farmhouse and Defendant MHTCP concerning their respective obligations under the LPA.

35.     Plaintiff Farmhouse alleges that (i) it has fully performed its obligations owed under the LPA (and/or that they are excused due to material breach by MHTCP), (ii) the conditions for exercise of Farmhouse's option rights are fully satisfied, (iii) it has timely and properly notified MHTCP of its intent to do so, and (iv) the interest to be valued and purchased is the limited partnership interest currently held by MHTCP, not the underlying real estate.

36.     MHTCP, on the other hand, contends that (i) Farmhouse somehow has forfeited its option rights by virtue of the 2016 Court Order, and (ii) the valuation on which the option is based must contemplate a hypothetical forced liquidation of the underlying property, that is, that MHTCP can somehow force Farmhouse to forfeit its valuable management rights and dissolve the partnership, which is

scheduled to operate until 2054. There is no legal or factual support for MHTCP's arguments for forfeiture of Farmhouse' option and management rights.

37.     Thus, a current controversy exists between the parties, regarding the proper interpretation and application of the LPA.

38.     By reason of the foregoing, a justiciable controversy exists as contemplated by Mont. Code Ann. § 27-8-101, et seq.

39.     Pursuant thereto, Plaintiff seeks declaratory relief from the Court establishing that Plaintiff is entitled to exercise the option right set forth in the LPA and ordering MHTCP to comply with its obligations in connection therewith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     For specific performance of Defendant MHTCP's duties under the LPA, including in connection with the exercise of Farmhouse's option as set forth in Article VIII of the LPA.

2.     For costs and interest as allowed by law (statutory or common law), contract, or equity.

3.     For any such other relief as may be permitted by law or equity or deemed appropriate by this Court.

DATED this 30th day of April 2021.

John L. Amsden
BECK AMSDEN & STALPES, PLLC

*Attorneys for Plaintiff*



**COX CASTLE NICHOLSON**

**Cox, Castle & Nicholson LLP**
2029 Century Park East, Suite 2100
Los Angeles, California 90067-3284
P: 310.284.2200  F: 310.284.2100

Edward F. Quigley
310.284.2271
equigley@coxcastle.com

File No. 99999

May 23, 2017

**VIA E-MAIL AND US MAIL**

John L. Amsden, Esq.
Beck, Amsden & Stalpes
1946 Stadium Drive, Suite 1
Bozeman, MT 59715

> Re:   *Assignment of General Partner's Option to Purchase the Limited Partners' Interests in Farmhouse Partners—College Limited Partnership ("Bridger I Partnership")*

Dear Mr. Amsden:

Our office represents Multi-Housing Tax Credit Partners XXX, the limited partner of the Bridger I Partnership. This letter responds to your letter of April 20, 2017 directed to Jeffrey Sussman.

<u>The Limited Partner's Consent is Required</u>

As you acknowledge in your letter, pursuant to section 12.1(b) of the Amended and Restated Agreement of Limited Partnership of the Bridger I Partnership (the "Partnership Agreement"), "the General Partner shall have the right to assign all or any part of such General Partner's Interest in the Partnership <u>only with the Consent of the Limited Partner.</u>" "Consent of the Limited Partner" is defined as "the prior written consent or approval of the Limited Partner." As evidenced by the Settlement Agreement dated September 30, 2016 (which you attached as Exhibit 1 to your April 20, 2017 letter), the General Partner's assignment of its option to purchase the Limited Partner's Interest in the partnership to Susan Burrows was expressly conditioned on receiving the Limited Partner's consent to the assignment.

In your letter you argue that "Interest" means the entire ownership interest of a Partner in the Partnership. You argument however ignores the express language of section 12.1(b) which states: "The General Partner shall have the right to Assign all <u>or any part of</u> such General Partner's Interest in the Partnership only with the Consent of the Limited Partner." By its express terms, the Partnership Agreement requires the prior written consent of the Limited Partner whether the General Partner is purporting to assign all of its interest or <u>any part of</u> its interest. In addition, "Assign" is defined in the Partnership Agreement as "a valid sale, exchange, transfer, pledge or syndication or other disposition of all or any portion of an Interest."

**EXHIBIT**

1

REC...

John L. Amsden, Esq.
May 23, 2017
Page 2

Once again, the parties made clear that the General Partner has no right to assign its interest, or any portion thereof (which naturally includes the General Partner's purchase option), without the Limited Partner's prior written consent.  The Limited Partner declined to provide such consent.

<u>The Limited Partner is not obligated to approve the assignment</u>

   Contrary to the authority cited in your letter, a limited partner has a right to deny its consent even if that denial is not in the best interest of the partnership.  The law you cite also ignores the status of Multi-Housing Tax Credit Partners XXX as the limited partner.  In any event, in this case, (i) the Limited Partner declined to consent to the assignment of the General Partner's purchase option, and (ii) the Limited Partner's denial is justified and reasonable (objectively and subjectively), particularly in light of the conduct and threats made by Ms. Burrows.

   The Limited Partner's decision to withhold its consent was certainly reasonable. The Limited Partner entered into both the Bridger I Partnership and the Bridger II Partnership with Farmhouse Partners Limited Partnership ("FPLP") as the General Partner, and Mr. Dabney as its principal. The Limited Partner underwrote the project with Mr. Dabney and FLPL as the General Partner and is therefore familiar with Mr. Dabney's knowledge and experience with the type of low income housing project here at issue. The Limited Partner does not know Ms. Burrows, has no understanding of her relevant experience or expertise in low income housing projects, and does not know her character or business style, including how she deals with partners such as the Limited Partner.  Given the physical layout of Bridger I and Bridger II, the Limited Partner would not want a third party, such as Ms. Burrows, to acquire ownership of Bridger II and compete with Bridger I while the Limited Partner and FPLP retained ownership of Bridger I.  Likewise, the limited partner of Bridger II would not want a third party, such as Ms. Burrows, to acquire ownership of Bridger I and compete with Bridger II while the Bridger II limited partner and FPLP retained ownership of Bridger II.

   In addition, the purchase option process is a cooperative process that requires the General Partner and Limited Partner to work together try to agree upon value and, if that fails, select an appraiser, provide the appraiser with appropriate information and materials, and work through an uncertain number of related issues, including those set forth in section 8.1 of the Partnership Agreement.  The Option process can run very smoothly and cooperatively, or can devolve into costly, distracting litigation. Given the Limited Partner's familiarity with FPLP and Mr. Dabney, the Limited Partner was comfortable in granting FPLP a purchase option.  In only brief interactions with Ms. Burrows, it is already clear that she is approaching the valuation process in a non-cooperative manner, threatening litigation and taking positions completely contrary to the express language agreed upon by the parties.

John L. Amsden, Esq.
May 23, 2017
Page 3

### The Court Order does not obligate the Limited Partner to consent to the assignment

You letter also insinuates that the Limited Partner would somehow be in breach of a Court Order if it refused to consent to the assignment. The Limited Partner was not a party to the divorce proceedings or the settlement agreement that resulted in the Court's Order. As such, the Order does not include the Limited Partner or in any relevant way bind the Limited Partner.

In addition, the Settlement Agreement entered into between the General Partner and Ms. Burrows expressly states "in the event the existing limited partners in Bridger I and Bridger II do not consent to the transfer of the Options, Dabney shall cooperate, in good faith, in negotiating a purchase of the limited partner interests in his name, upon terms and conditions proposed and approved by Burrows, and shall, immediately upon obtaining such limited partner interests, transfer them to Burrows." In other words, the Settlement Agreement anticipates and accounts for the possibility (if not likelihood) that the Limited Partner will NOT provide its consent to the transfer of the Option, exactly as the Limited Partner has done. Moreover, the General Partner and Ms. Burrows agreed upon how the Option should be handled under such circumstances. In short, the Limited Partner's denial of consent is not a violation of the Court Order -- it was expressly contemplated by the Court Order.

### Since the Purchase Option cannot be exercised until 2021, any claim regarding the Purchase Option is premature

Pursuant to the terms of the Partnership Agreement, this dispute is premature. The purchase option is not even triggered until 2021.

In any event, please advise if Ms. Burrows desires to purchase the Limited Partner's Interest now and, if so, please forward any offer Ms. Burrows wishes to make. The Limited Partner will respond in a timely manner.

\*\*\*\*\*

This letter is not a recitation of all of the applicable partnership provisions, law or facts. The Limited Partner does not intend to waive (and does not waive) any of its rights or remedies under the Partnership Agreement or otherwise, including its potential right to remove the General Partner or hold the General Partner in default pursuant to the terms of the Partnership Agreement.

John L. Amsden, Esq.
May 23, 2017
Page 4

Do not hesitate to call with any questions.

Very truly yours,

Edward F. Quigley

EFQ

077839\8742394v4