# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| FARMHOUSE PARTNERS LIMITED PARTNERSHIP,<br><br>                  Plaintiff,<br><br>  v.<br><br>MULTI-HOUSING TAX CREDIT PARTNERS XXX,<br><br>                  Defendant. | **CV-21-48-BU-BMM**<br><br>**ORDER** |

Plaintiff Farmhouse Partners Limited Partnership ("Farmhouse") filed this Complaint against Defendant Multi-Housing Tax Credit Partners ("MHTCP"), asserting that MHTCP failed to perform under the parties' partnership agreement. (Doc. 10 at 9). The Parties have filed competing cross-motions for summary judgment. (Docs. 60 & 64.) The Court held a hearing on the Parties' summary judgment motions on April 13, 2022. (Doc. 117.) The Court determines that disputed

facts preclude judgment for either Party. The Court will deny both motions for summary judgment.

Additionally, MHTCP moved to compel Farmhouse to produce a "Limited Scope Engagement Agreement re: exercise of Options in Bridger I and Bridger II under limited partnership agreements" ("Engagement Agreement") sent by John Amsden on September 1, 2020. (Doc. 48 at 6.) Farmhouse argues that the document is privileged and not subject to discovery. (Doc. 50.) The Court ordered Farmhouse to submit the Engagement Agreement for *in camera* review. (Doc. 51.) The Court has reviewed the Engagement Agreement. The Court determines that the Engagement Agreement proves relevant to MHTCP's defense and relates to a nonprivileged matter. *See* Fed. R. Civ. P. 26. Farmhouse shall produce the Engagement Agreement.

## BACKGROUND

This case concerns a dispute between the general partner and limited partner of a Montana limited partnership called the Farmhouse Partners – College Limited Partnership ("Partnership"). Farmhouse serves as the general partner to the Partnership and is itself a limited partnership. The parties that comprise Farmhouse's limited partnership are an entity called Dabney Company (the general partner) and a person named Kendrick Wilson III (the limited partner). William Dabney ("Dabney"), is the sole shareholder of Dabney Company. MHTCP serves as the

limited partner to the Partnership and is itself also a partnership.

The principal asset of the Partnership is a low-income housing tax credit (LIHTC) project in Bozeman, Montana referred to by the Parties as the "Bridger I" project. The LIHTC program is a federal subsidy program designed to promote the construction and rehabilitation of rental housing for low and moderate income households. As a LIHTC project, the Bridger I project was subject to a 15-year "compliance period." During that period, the project was to comply with LIHTC regulations and ensure that tax credits were retained.

Farmhouse and MHTCP agreed that Farmhouse would have the option to purchase MHTCP's partnership interest three years after the 15-year compliance period ended so long as Farmhouse was not "in default." Doc. 26-1 at 67 (Section 8.1). The Amended and Restated Agreement of Limited Partnership of Farmhouse Partners –College Limited Partnership ("Partnership Agreement") provides that Farmhouse cannot assign or transfer the purchase option or any interests in the Partnership without MHTCP's consent. *Id.* at 77 (Section 12.1). The Partnership Agreement defines "assignment" to mean "a valid sale, exchange, transfer, pledge or syndication or other disposition of all or any portion of an Interest." (*Id.* at 8.) An assignment of rights in the Partnership without MHTCP's consent would cause a default under the Partnership Agreement. (*Id.* at 12.) The dispute revolves around whether Farmhouse improperly assigned its rights in the Partnership and was thus in

default when it attempted to exercise the purchase option.

This underpinnings of this dispute began when Dabney and his wife Susan Burrows ("Burrows") divorced. As set forth in Dabney's and Burrows's 2013 divorce settlement agreement, Dabney agreed to transfer interests in LIHTC projects to Burrows as part of their marital property division. This transfer included interests in the Bridger I project. Dabney and Burrows executed a second divorce settlement agreement on September 30, 2016. (Doc. 28-13.) The Montana District Court for the Eighteenth Judicial District, Gallatin County, approved the settlement agreement. The second agreement provided that Dabney would transfer or assign Burrows his rights to purchase MHTCP's limited partnership interest in the Bridger I project. (*Id.* at 8-9.) The divorce settlement further provided that, in the event that MHTCP did not consent to assigning Burrows the purchase option, Dabney would facilitate the purchase through Farmhouse under terms acceptable to Burrows. (*Id.*)

Following the divorce settlement agreement, Farmhouse requested that MHTCP consent to the assignment of the purchase option to Burrows. (Doc. 66-11.) MHTCP declined. MHTCP cited its limited working relationship with Burrows. (Doc. 62-12.) Burrows's attorney John Amsden, of Beck, Amsden & Stalpes, PLLC, sent a letter to MHTCP on April 20, 2017. Amsden's letter stated that Farmhouse's right to purchase the limited partnership interest had been assigned to Burrows and demanded that MHTCP make the necessary arrangements for Burrows's exercise of

Farmhouse's option. (Doc. 62-13.) MHTCP again declined.

MHTCP claimed that Farmhouse had defaulted on the Partnership agreement by improperly assigning its interest to Burrows. (Docs. 62-14; 62-15.) Farmhouse's counsel, and Dabney's divorce attorney, Trent Gardner, responded to MHTCP's claim of a default by stating that there had been no assignment. Gardner asserted that Amsden and Burrows do not speak for Farmhouse. (Doc. 62-15.)

MHTCP and Burrows attempted separately to negotiate for the purchase of MHTCP's interest in the Bridger I project in early 2018. Negotiations between Burrows and MHTCP failed in March of 2018 after the two could not agree on the value of MHTCP's interest. Neither Burrows nor Farmhouse made further attempts to negotiate with MHTCP.

The purchase option period for the Bridger I project began on January 1, 2021. Farmhouse attempted to exercise the option on January 26, 2021, consistent with the timeline provided by the Partnership Agreement. MHTCP claimed that Farmhouse could not exercise the option due to Farmhouse being in default for assigning its purchase option to Burrows. MHTCP demanded that the Bridger I project be listed on the national market as a result of Farmhouse's default.

Farmhouse responded that there had been no assignment to Burrows and no corresponding default. Farmhouse filed this suit for specific performance of the

purchase option. Beck, Amsden & Stalpes, PLLC represents Farmhouse in this lawsuit.

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant satisfies its burden when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## ANALYSIS

I. **Factual Disputes Remain that Preclude Summary Judgment for Either Party.**

The Parties' motions for summary judgment present a single issue: whether

Farmhouse defaulted by assigning a right that it could assign only with the consent of MHTCP. Absent a default, Farmhouse would have the right to exercise the purchase option under the Partnership Agreement. (*See* Doc. 26-1 at 67 (Section 8.1).) The Court determines that sufficient facts remain in dispute to preclude summary judgment on this issue.

The Parties continue to dispute the control that Burrows and her representatives have asserted over Farmhouse's exercise of the purchase option. The Court lacks clarity over the paramount issue in this case as a result. Farmhouse argues that Burrows has not exerted control over Farmhouse's attempt to exercise the purchase option. Farmhouse claims that, as was the case before Burrows's and Dabney's divorce, the Dabney Company has exercised continued control over Farmhouse. Farmhouse notes that Dabney and Farmhouse are distinct entities and argues that the contention that Farmhouse assigned an option or ceded control to Burrows is merely MHTCP's attempt to increase the value of its interest in the Bridger I project.

MHTCP claims that an assignment of the purchase option has occurred and cites as evidence the language in Burrows's and Dabney's 2016 divorce agreement, circumstantial evidence of Burrows's control of Farmhouse, and statements made during Dabney's deposition. Farmhouse was not a party to the divorce agreement. The divorce agreement alone fails to persuade the Court that a transfer or assignment

of a right from Farmhouse to Burrows has occured. MHTCP does point, however, to circumstantial evidence of an improper assignment.

MHTCP cites John Amsden's letter claiming an assignment to Burrows and the fact that the John Amsden and the Beck, Amsden & Stalpes, PLLC firm now represents Farmhouse. MHTCP also notes that Farmhouse has changed how it values a limited partner interest, in comparison to purchase options that Farmhouse has exercised for its other properties. This circumstantial evidence creates enough doubt of an assignment from Farmhouse to Burrows to prevent the Court from granting summary judgment in favor of Farmhouse. The evidence also does not remove all doubt that an assignment occured sufficient to grant summary judgment for MHTCP.

The Court notes that even the meaning of Dabney's testimony, which MHTCP believes to be strongly in its favor, remains in dispute. Dabney stated during his deposition that he stood to gain no financial benefit in exercising the purchase option, and that Burrows would dictate the terms of the purchase option. (Doc. 62-3 at 41-43.) Farmhouse argues that Dabney spoke only in his personal capacity during the deposition. MHTCP claims that Dabney spoke on behalf of Farmhouse as its Rule 30(b)(6) designee. The Court has no further mechanism to determine which party has the correct interpretation other than to hear Dabney's testimony at trial.

Farmhouse argues that MHTCP's withholding of consent means that an assignment in breach of the Partnership Agreement could not have occurred as a

legal matter. Farmhouse relies on *R.C. Hobbs Enterprises LLC v. J.G.L. Distributing, Inc.*, 104 P.3d 503 (Mont. 2004), and *Rother-Gallagher v. Montana Power Co.,* 522 P.2d 1226, 1228 (Mont. 1974), to support its assertion. In *R.C. Hobbs Enterprises*, an entity named J.G.L. Distributing agreed to make monthly payments to a landowner in exchange for temporary possession of the land and the option to purchase. 104 P.3d at 505. The contract provided that J.G.L. Distributing could not assign its interest in the purchase option without the landowner's consent. *Id.* J.G.L. Distributing assigned its option right to R.C. Hobbs Enterprises without obtaining the consent of the landowner. *Id.* at 506. The landowner refused to honor the purchase option when R.C. Hobbs attempted to exercise the option. *Id.* J.G.L. Distributing then attempted to exercise the option, but the landowner refused citing J.G.L. Distributing's improper assignment. *Id.*

The Montana Supreme Court determined first that the assignment to R.C. Hobbs Enterprises was void because J.G.L. Distributing lacked the consent required to make an assignment. *Id.* at 508. The Montana Supreme Court then turned to J.G.L. Distributing's breach of contract. The Montana Supreme Court concluded that no material breach of contract had occurred and allowed J.G.L. Distributing to assert its purchase option right. *Id.* The Montana Supreme Court reasoned that the assignment had not defeated the purpose of the contract and that the landowner had suffered no damage as a result of the assignment. *Id.* at 508-09.

Farmhouse argues that *R.C. Hobbs Enterprises* stands for the proposition that because an assignment is void without MHTCP's consent, no breach of contract could have occurred absent that consent. Farmhouse misinterprets the Montana Supreme Court's reasoning in *R.C. Hobbs Enterprises*. Farmhouse correctly notes that Montana courts will deem an assignment without consent void when a party withholds consent. Farmhouse is incorrect, however, that an assignment without consent would not necessarily cause a breach of contract. On the contrary, the Montana Supreme Court affirmed the district court's determination that the assignment in *R.C. Hobbs Enterprises* constituted a breach of contract. *Id.* at 508. The Montana Supreme Court allowed J.G.L. Distributing to exercise the purchase option only because it determined that the breach had not been material. *Id.* at 508-09.

*Rother-Gallagher* also supports the assertion that an assignment without consent is void where the contract required consent. 522 P.2d at 1228. This case likewise has no bearing on whether an assignment without consent rises to the level of a breach of contract. Given that an improper assignment, though not legally enforceable, may constitute a breach of contract, the question whether an assignment occurred in this case relies upon facts still in dispute.

Farmhouse also argues that the doctrine of laches and judicial estoppel should bar MHTCP from claiming an assignment occurred. This argument fails to persuade

the Court. Farmhouse notes correctly that MHTCP earlier took the position that Farmhouse could not assign the purchase option to Burrows without its consent. (*See* Doc. 62-14.) The Court disagrees that this position should now bar MHTCP from arguing that Farmhouse did assign the purchase option to Burrows. MHTCP's prior claim that Farmhouse cannot assign its purchase option to Burrows without violating the Partnership Agreement does not conflict with its current argument that Farmhouse has violated the Partnership Agreement by assigning the purchase option to Burrows without its consent. The former position merely restates the terms of the Partnership Agreement. MHTCP's current position reflects the necessary outcome resulting from an improper assignment in violation of those terms. Those positions do not conflict and doctrine of laches or judicial estoppel by inconsistent positions cannot apply. *See, e.g., Dagel v. City of Great Falls*, 819 P.2d 186, 192–93 (Mont. 1991); *Algee v. Hren*, 375 P.3d 386, 389 (Mont. 2016).

The Court cannot determine that the evidence produced by the parties permits only one conclusion due to the factual disputes that persist. Either party may yet have the more meritorious claim depending on the outcome of these factual disputes. The Court therefore denies the summary judgment motions of both parties.

**II.  Farmhouse Shall Produce the Engagement Agreement.**

The Court determines that the Engagement Agreement relates to MHTCP's defense. As discussed above, MHTCP bases its defense on the contention that

Farmhouse improperly assigned its right to purchase MHTCP's interest to Burrows. MHTCP grounds its argument on the control that Burrows allegedly has exercised over Farmhouse's purchase option. Burrows's involvement or noninvolvement in the Engagement Contract thus proves relevant to MHTCP's defense.

Farmhouse's argument that disclosing the Engagement Agreement would infringe upon the privacy rights of Burrows, Dabney, or their families fails to persuade the Court. The Engagement Agreement is a standard engagement contract between Beck, Amsden & Stalpes, PLLC, and its clients Farmhouse, Chui Investments, LLC, and Turnaround Trading and Advisory Services, LLC. Nothing in the agreement invades the privacy of the individuals exercising control over those entities.

Farmhouse argues that the common interest doctrine should apply to the Engagement Agreement. The Court previously determined that Farmhouse appropriately withheld 17 documents under the common interest doctrine. (Doc. 41.) These 17 documents comprised transmittal email messages between John Amsden and Trent Gardener and attached documents, either prepared by MHTCP and sent to Farmhouse, or documents sent by Farmhouse to MHTCP. (*Id.* at 2-3.) The Court determined that those documents involved communications developed "in furtherance of the joint strategy for Farmhouse to exercise the [purchase] option." (*Id.*) Unlike the aforementioned 17 documents, however, the Engagement

Agreement is not a communication demonstrating a joint strategy.

To assert attorney-client privilege under the common interest doctrine, a party must establish that (1) the communication is made by separate parties concerning a matter of common legal interest; (2) the communication is designed to further that effort; and (3) privilege has not been waived. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). The party must show that the withheld communication was made "in pursuit of a joint strategy in accordance with" an agreement. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).

The Engagement Agreement does not constitute a communication to further a matter of common legal interest. The Engagement Agreement merely establishes the fee arrangement between Beck, Amsden & Stalpes, PLLC, and its clients. The common interest doctrine thus does not apply to the Engagement Agreement. Given that the Engagement Agreement proves relevant and not privileged, the Court requires Farmhouse to produce the Engagement Agreement.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that the Parties' Motions for Summary Judgment (Docs. 60 & 64) are **DENIED**. The Parties shall submit proposed Findings and Recommendations to the Court on or before the trial date of May 31, 2022.

MHTCP's Motion to Compel Production of September 1, 2020 Limited

Scope Engagement Letter, or for *In Camera* Review (Doc. 47) is **GRANTED**. Farmhouse shall produce to MHTCP the Engagement Agreement on or before May 12, 2022. The terms of the agreement shall be held confidential by MHTCP and its attorneys and shall not be revealed to anyone not party to this case.

DATED this 10th day of May, 2022.

_____
Brian Morris, Chief District Judge
United States District Court