# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| FARMHOUSE PARTNERS LIMITED PARTNERSHIP, | **CV-21-48-BU-BMM** |
| Plaintiff, | |
| v. | **ORDER** |
| MULTI-HOUSING TAX CREDIT PARTNERS XXX, | |
| Defendant. | |

The Court appointed an expert appraiser, Kraig P. Kosena, to determine the valuation of the property at issue. (Doc. 245.) The Court instructed Plaintiff Farmhouse Partners Limited Partnership ("Farmhouse") and Defendant Multi-Housing Tax Credit Partners XXX ("MHTCP") to submit their proposed valuation methodologies and relevant documents. (*See id.*) The parties submitted their respective documents, and the Court held a hearing on the proposed instructions on April 14, 2025. (Doc. 256.) The Court will provide Kosena with two sets of instructions to perform two valuations.

Accordingly, **IT IS ORDERED:**

1. Kosena will perform two valuations of the property in accordance with the following two sets of instructions. The Court will provide Kosena with all necessary accompanying documents for each set of instructions.

2. FARMHOUSE'S INSTRUCTIONS

    a. Kosena will value the Bridger I Limited Partner interest as a going concern, assuming continued use of the Bridger I Partnership's principal asset, known to the parties and the Court as the Bridger I Project, for low-income housing.

    b. Kosena's valuation of the limited partner interest in the Bridger I Limited Partnership will be based upon the present value of the anticipated future benefits that will flow to the owner of the limited partner interest from the continued operation of the Bridger I Partnership.

    c. Kosena's valuation of the limited partner interest will not be based upon a hypothetical forced liquidation or refinancing of the Bridger I Project or dissolution of the Bridger I Partnership, because: (1) the option's plain language and courts' interpretation thereof require a going concern valuation; (2) the intent of the Bridger I Limited Partnership was for the Bridger I Limited Partnership to continue until 2057 and for the general partner to assume the limited partner interest

for $1 plus the assumption of all liabilities at the time the option ripened; and (3) the LPA specifically requires consent of the general partner to sell the Bridger I Project or dissolve the Bridger I Partnership,[1] and the general partner (Farmhouse) has given no such consent.

d. Kosena shall be informed that the limited partner interest in the Bridger I Limited Partnership has been valued by two MAI appraisers previously. If Kosena requests to review those prior appraisals among the materials relevant to the assignment, the Court will provide them. If Kosena does not request to review the previous appraisals among the materials relevant to completing the assignment, the Court will provide them to Kosena *after* Kosena submits his reports but *before* the evidentiary hearing, to allow Kosena the opportunity to prepare for potential areas of cross-examination. *See* Fed. R. Evid. 706(b)(4) (allowing for cross-examination of court-appointed expert).

Kosena shall consider the following issues affecting the limited partner interest's Fair Market Value, as it is defined under the LPA:

- Limited Partnership Structure and Control Limitations.
  - The LPA outlines the rights, restrictions, and economic benefits flowing to the limited partner.

---

[1] *See* Exh. 2, LPA §§ 7.3.F, 7.3.S, 8.1.F, 15.1.C.

- o The limited partner lacks control over key decisions, such as selling and refinancing the Bridger I Project.

- o The limited partner's limited control reduces the limited partner interest's marketability and fair market value.

- Priority of Distributions and Economic Benefits.

  - o The LPA dictates cash flow distribution, which favors the general partner.

  - o After the limited partner receives $5,000,000 in tax credits, the limited partner receives limited distributions. Ninety percent (90%) of distributions go to the general partner, pursuant to LPA § 11.2.A(9).

- Market and Submarket Conditions.

  - o Bozeman, Montana's real estate market conditions, occupancy rates, and demand for low-income housing impact future revenue to the Bridger I Limited Partnership.

  - o Restricted rents under the federal Low-Income Housing Tax Credit ("LIHTC") program limit income potential.

- Historical and Forecasted Performance.

  - o Past rent rolls, audited financials, and profit and loss statements demonstrate financial stability.

  - o Forecasting future cash flow determines expected return and discounted cash flow valuation.

- Existing Debt and Liabilities.

  - o Debt structure affects residual cash flow to the limited partner. If debt service is high, the limited partner may receive little or no distributions.

- o Ground leases or deferred developer's fees impact net cash flow, reducing the limited partner interest's value.

- Marketability.

  - o Limited partner interests are typically illiquid, further reducing the value of the limited partner interest.

  - o Marketability discounts are applied when an interest is hard to sell, also lowering value.

- Risk Factors and Required Rate of Return.

  - o Risk assessment includes considering economic conditions, partnership disputes, and regulatory risks.

  - o Valuation of the limited partner interest requires determining an appropriate discount rate based on risks.

Pursuant to LPA Article VIII, Mr. Kosena shall consider and analyze the following materials, in addition to any other materials Mr. Kosena may request:

- Bridger I Limited Partnership ownership diagram, Exh. 1;

- Bridger I Limited Partnership LPA, Exh. 2;

- Bridger I Limited Partnership monthly rent roll for past 12 months, Exh. 3;

- Bridger I Limited Partnership 2023 audit report, Exh. 4;

- Bridger I Limited Partnership 2024 audit report, Exh. 5;

- Bridger I Limited Partnership 2024 unaudited profit and loss statements, Exh. 6;

- Bridger I Limited Partnership tax return for 2023, Exh. 7;

- *Farmhouse Partners Limited Partnership v. Multi-Housing Tax*

*Credit Partners XXX*, No. 2:21-cv-48-BMM, Findings of Fact and Conclusions of Law (D. Mont. Nov. 16, 2022), Exh. 8;

- *Farmhouse Partners Limited Partnership v. Multi-Housing Tax Credit Partners XXX*, No. 22-36035, Memorandum Disposition (9th Cir. Jan. 25, 2024), Exh. 9;

- *Farmhouse Partners Limited Partnership v. Multi-Housing Tax Credit Partners XXX*, No. 22-36035, Oral Argument Transcript, (9th Cir. Jan. 9, 2024), Exh. 10;

- Farmhouse Partners Limited Partnership v. Multi-Housing Tax Credit Partners XXX, No. 22-36035, Oral Argument Video, (9th Cir. Jan. 9, 2024)    (https://www.ca9.uscourts.gov/media/video/?20240109/22-36035/);

- *White Settlement Sr. Living, LLC v. Multi-Housing Tax Credit Partners XXXI*, 2022 WL 18542447 (JAMS Arb. No. 1410008849) (Tex. Dist. Apr. 25, 2022), Exh. 11

- *White Settlement Sr. Living, LLC v. Multi-Housing Tax Credit Partners XXXI*, 2022 WL 18492132 (Tex. Dist. June 24, 2022), Exh. 12;

- *Multi-Housing Tax Credit Partners XXXI v. White Settlement Sr. Living, LLC*, No. 05-22-00721-CV, 2024 WL 301916 (Tex. App. Dallas Jan. 26, 2024), Exh. 13;

- Ltr. Cathy Moses to Michael Black re: Bridger I and Bridger II (June 5, 2024), Exh. 14;

- Keith O'Reilly, MAI, MT-400, *An Appraisal Report of Limited Partner Interest Valuation in Farmhouse Partners – College Limited Partnership* (Jan. 11, 2021), Exh. 15; and

- Andrew Lines, MAI, *Farmhouse Partners – College Limited Partnership Valuation of the Limited Partner Interest as of February 29, 2024* (Mar. 29, 2024), Exh. 16.

3. **MHTCP's Instructions**

As an MAI appraiser with over 10 years' of experience appraising low-income housing projects, you are hereby instructed as follows:

    a. Appraise the fair market value of the 44-unit low-income housing project (the "Property") owned by Farmhouse Partners - College Limited Partnership (the "Partnership") using the income capitalization method and assuming continued use of the Property for low-income housing. *See* Ex. A (LPA excerpts), § 8.1.

        i. Assume that the monthly rental income from the Property will be equal to the average monthly rental income of the twelve complete calendar months ending January 31, 2025.[2] *See id.*[3]

        ii. Determine pro forma monthly expenses for the Property to be used in determining net operating income for the

---

[2] Since all 44 units of the Property are rent-restricted pursuant to Section 42(g)(2) of the Internal Revenue Code, the average monthly rental income of the prior twelve complete calendar months will necessarily be less than the maximum monthly rental income that the Property would produce based on the gross rents chargeable for rent-restricted units pursuant to Section 42(g)(2) of the Code. LPA § 8.1 requires the appraiser to assume that the monthly rental income from the Property will be equal to the average monthly rental income of the prior twelve complete calendar months.

[3] The Limited Partner does not have the financial statements that show the rental income for the prior 12 months, but Farmhouse as the general partner should have such materials, and should be filing them for the Appraiser given section 8.1's language. If Farmhouse for some reason does not provide them, MHTCP reserves the right to seek and supplement its materials to show the trailing 12-months rental income.

Property.

    iii.  Identify comparable property sales to determine the appropriate capitalization rate (cap rate), taking into account that there is significantly less risk involved in achieving <u>historical</u> rental income than in achieving projected or pro forma rental income.

b.  Determine the net asset value of the Partnership by adding to the Property value (the value determined in step 1 above) all cash, reserves, and receivables of the Partnership as of January 31, 2025; and subtract from that total all Partnership liabilities, other than amounts owing to Partners, as of January 31, 2025. *See* Ex. B (Jan. 31, 2025 balance sheet reflecting a total of $332,900 in cash (checking, savings, escrow, replacement reserves, and petty cash) and receivables (accounts and interest receivable), and $800,930 in liabilities, other than the Investor Service Fees which are payable to partners).

c.  Determine the value of the LP Interest by allocating the Partnership's asset value (the value determined in step 2 above) in accordance with the distribution provision set forth in section 11.2B of the Partnership's limited partnership agreement, which

provides:

    i.  First, to the payment of all of the expenses of such Sale

        Refinancing Transaction, and, with regard to damage

        recoveries or insurance or condemnation proceeds (other

        than for temporary loss of use), to the payment of all repairs,

        replacements or renewals resulting from damage to or partial

        condemnation of the affected property; [not applicable here]

   ii.  Second, to the payment of all debts and obligations of the

        Partnership due upon the occurrence of such Sale or

        Refinancing Transaction other than Voluntary Loans, the

        Developer Note or any loans made to the Partnership

        pursuant to the Project Agreement; [not applicable here]

  iii.  Third, to establish such reserves as the General Partner

        determines with the Consent of the Limited Partner to be

        reasonably necessary for any contingent or foreseeable

        liability or obligation of the Partnership; provided, however,

        that the balance of any such reserve remaining at such time

        as the General Partner shall reasonably determine that such

        reserve is no longer necessary shall be distributed in

accordance with the following subparagraphs of this

Paragraph 11.2.B; [not applicable here]

iv.  Fourth, to the payment of the priorities set forth in

Subparagraphs 11.2.A.(1) through (8), inclusive;

11.2A(1)-(2) – Limited Partner Voluntary Loans [not applicable here]
11.2A(3) – Accrued and unpaid Asset Management Fee [appears to be $9,359 based on 1/31/25 balance sheet, Ex. B]
11.2A(4) – Developer Note [not applicable here]
11.2A(5) – Unpaid or accrued Partnership Administration Fee [appears to be $0 based on 1/31/25 balance sheet, Ex. B]
11.2A(6)-(8) – General Partner Voluntary Loans and Deferred Developer Fee [not applicable here]

v.  Fifth, to the return of the Limited Partner's Capital

Contribution until the entire amount of said Capital

Contribution has been returned; [$3,899,610 per audited

financial statements & LPA, § 3.2]

vi.  Sixth, to the return of the General Partner's Capital

Contributions until the entire amount of such Capital

Contributions has been returned; [$0 per audited financial

statements] and

vii.  Seventh, 90% of the remaining amount to the payment to the

General Partner of the Disposition Fee provided in

Paragraph 6.7 hereof; and

viii.  The balance, if any, shall be distributed .01% to the General

Partner and 99.99% to the Limited Partner.

*See* Ex. A (LPA), § 11.2B.[4]

To assist the Appraiser, the Limited Partner is filing as an exhibit a

spreadsheet that uses a hypothetical Property Value of $7,500,000 (i.e., after

applying step 1).  *See* Ex. C.  This spreadsheet then determines Partnership net

asset value by adding all other assets and subtracting liabilities; and flows that

amount through the 11.2B waterfall, based on inputs taken from January 2025

balance sheet.  *See* Exs. B, C.  As this sheet shows, based on a hypothetical

Property value of $7,500,000, the LP Interest Value is $4,221,238.  The

Limited Partner can make available a native Excel file reflecting the inputs in

Exhibit C if the Appraiser requests such file from the Court.

DATED this 22nd day of April 2025.

_____
Brian Morris, Chief District Judge
United States District Court

---

[4] Although section 11.2B is expressly "Subject to the provisions of Paragraph
15.4" of the LPA, the distribution allocation here is the same under sections 11.2B and 15.4.